Marie S. MOSLEY, Appellant,

v.

HARDIN COUNTY SAVINGS & LOAN
ASSOCIATION, Appellee.

No. 8457.

Court of Civil Appeals of Texas,
Beaumont.

May 29, 1980.

Charles Sexton, Orange, for appellant.

H. A. Coe, Jr., Kountze, for appellee.

CLAYTON, Justice.

Appellant, Marie S. Mosley, as plaintiff below, instituted this action against appellee and defendant below, Hardin County Savings and Loan Association (HCSLA), seeking recovery of $4,222.62 in funds retained by HCSLA in a certain savings account No. 300557. HCSLA filed a motion for summary judgment which was granted by the trial court, and from this judgment appellant appeals.

Appellant was the daughter of Clarence A. Sarver, and her cause of action against HCSLA was based entirely upon the allegations that Sarver "maintained an account with HCSLA under Account No. 300557, and, at the time of his death, the said [Sarver] had on deposit the approximate sum of $4,222.62. . . . Although repeated demands have been made upon [HCSLA], said defendant has failed and refused, and still fails and refuses, to deliver said sums to the heirs of [Sarver]."

The summary judgment proof shows that on September 3, 1975, HCSLA issued a certificate of savings, No. 300557, in the sum of $4,000.00 to "Clarence A. Sarver or Mrs. J. H. McNeely." The signature authorization card bore the signatures of Mrs. J. H. McNeely and J. H. McNeely. Sarver's signature does not appear thereon. Under the terms and provisions of this signature card, the savings account is in "the joint names of the undersigned as joint tenants with the right of survivorship. . . ." It further provided that withdrawals may be made by any one of the "undersigned."

On September 23, 1976, appellant and her father, Sarver, appeared at the office of HCSLA, and Sarver signed an "Affidavit of Lost Certificate" stating that he had lost or misplaced the "Certificate (Passbook)" No. 300557, and requested the issuance of a "Duplicate Certificate passbook." He further agreed "to indemnify [Hardin County Savings and Loan Association] against all loss, expense and costs incurred by it as a consequence of duplicate Certificates being outstanding at the same time."

Based upon this affidavit and indemnity agreement, HCSLA issued a "duplicate certificate." But, this "duplicate" shows the savings account or certificate of savings is held by and in the name of "Clarence A. Sarver or Marie S. Mosley or Sheryl Williams." Another signature card, identical in terms and provisions as the card signed by Mrs. J. H. McNeely and J. H. McNeely, was signed by Marie S. Mosley. No other signatures appear thereon.

On the same day of the issuance of the "duplicate certificate," J. H. McNeely appeared at the offices of HCSLA and requested that no withdrawals be permitted from this savings account "[except] to Mr. McNeely." This request was noted on the books of HCSLA. In October 1976, demand was made upon HCSLA to pay the funds in the account of Marie S. Mosley, and such demand was refused. On March 18, 1977, J. H. McNeely presented the original passbook or certificate and withdrew the funds in the savings account and closed the account.

The cause of action brought by appellant was based upon the maintenance and existence of the savings account No. 300557, and, at the time of the death of Sarver, he had on deposit in said account the sum of $4,222.62. However, the proof shows that the account had been closed several months prior to the filing of appellant's petition. At the time this suit was filed, there was no money in this account; HCSLA did not have any funds belonging to anyone asserting ownership of the funds in Savings Account No. 300557. It is important to point out that this suit filed by appellant does not allege or complain of any negligence or wrongful payment to an unauthorized party by HCSLA.

The original certificate issued to "Clarence A. Sarver or Mrs. J. H. McNeely" was issued pursuant to the signature authorization card. This instrument specifically states, "The undersigned hereby apply for a 12-mos. certificate . . . and for issuance of evidence of membership . . .

in the joint names of the undersigned as joint tenants with the right of survivorship. . . ." The signature of Mrs. J. H. McNeely and J. H. McNeely were the "undersigned." Sarver's signature did not appear thereon. There is nothing in the record before us showing the person who actually deposited the funds to this account. Assuming Sarver to be the actual depositor, the certificate of savings or deposit represents a form of promissory note, and as such, it represents a contractual relationship between HCSLA and the depositor. *Worden v. Thornburg,* 564 S.W.2d 480 (Tex. Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.). The agreement between HCSLA, Sarver, Mrs. J. H. McNeely, and J. H. McNeely, according to the terms recited in the signature authorization card, was that Mrs. McNeely and J. H. McNeely were the owners of the funds in such account as joint tenants with the right of survivorship and that withdrawals from such account could be made by either Mrs. McNeely or J. H. McNeely.

At the time J. H. McNeely presented the passbook to HCSLA, made the withdrawal of the funds, and closed the account, he was authorized to do so, and HCSLA was authorized to pay over to McNeely the funds in such account. Such were the rights and duties of these parties unless this savings account had been closed and the funds therein were subject to the control of appellant arising from the transaction following the issuance of the "duplicate" certificate or passbook wherein appellant was given control of the account.

■ HCSLA argues it is not liable to appellant because it had issued a "duplicate" passbook and is protected from liability under the provisions of *Tex.Rev.Civ.Stat. Ann. art. 852a, §§ 6.06 and 6.08* (Vernon 1964 and Supp. 1980). We do not agree that *article 852a, § 6.06* is applicable to the facts of this case. This *article 852a, § 6.06* applies to the issuance of a "duplicate" passbook or certificate when the original book or certificate has been lost or destroyed. This *section 6.06* makes provision for a new book or certificate to replace the lost or destroyed original book or certificate. It is clear that the new book or certificate shall be identical to the lost or destroyed instrument. The so called "duplicate" issued by HCSLA upon Sarver's "Affidavit of Lost Certificate" did not comply with the terms of *article 852a, § 6.06.* The "duplicate" issued by HCSLA showed ownership of the funds or account in named parties different from those shown in the original certificate. HCSLA not only issued the new certificate in different names but also permitted a new signature authorization card showing a different person being entitled to withdraw from such account. This did not constitute a new account book or certificate, or duplicate, within the provisions of *article 852a, § 6.06,* and HCSLA could not deny liability upon the issuance of a "duplicate" thereunder. However, this point is not dispositive of this appeal.

The real and serious question before this court is whether Sarver had the right to close out the original account by withdrawing the right of control of the account of Mrs. J. H. McNeely and J. H. McNeely, and reopening the account in the name of "Clarence A. Sarver or Marie S. Mosley or Sheryl Williams" and authorizing withdrawals therefrom by Marie S. Mosley.

■ When the original account was opened with HCSLA, the contractual agreement provided that Mrs. J. H. McNeely and J. H. McNeely owned the account as joint tenants and were the only persons having authority to withdraw from such account and that withdrawals could be made by either party, only one signature being required for making withdrawals. Sarver was not given, and did not have, such authority. HCSLA would have no authority to allow withdrawals upon the signature of Sarver. If he then did not have authority to make withdrawals from the account upon his signature, he would not have the authority to change the names of the owners of the new certificate or to change the names of those with authority to make withdrawals, because such acts, in effect, would be tantamount to withdrawing the

funds and reopening the account in the names of new owners. He did not have such authority under the contractual provisions with HCSLA.

Since Sarver did not have the right or authority to change the account and place ownership of the funds in the name of Sarver or Mosley or Williams, then the status of the account remained just as it was on the date of the issuance of the original certificate and passbook. Therefore, when J. H. McNeely presented the passbook and certificate to HCSLA for the withdrawal of the funds, HCSLA was authorized to pay over such sums to him, and has no further liability pursuant to the provisions of *article 852a, § 6.08.*

Appellant argues that there is a genuine issue of fact as to whether the savings account was a "convenience" account created by Sarver with the mere right to manage the funds being granted Mrs. McNeely or J. H. McNeely, and for such reasons a summary judgment would be precluded. We do not agree with this argument. As to whether or not the account was a "convenience" account would only be considered and applied in a case seeking to determine ownership as between parties asserting ownership of the funds. In this case such a proceeding would be between J. H. McNeely and appellant. But, this suit filed by appellant did not seek such relief. Appellant is restricted to the grounds of recovery asserted in her pleadings and presented to the trial court. *Texas State Bank of Austin v. Sharp*, 506 S.W.2d 761 (Tex.Civ.App.—Austin 1974, writ ref'd n. r. e.). Moreover, this matter was not expressly presented to the trial court by pleadings, written motion, answer, or other response, and cannot be considered on appeal as grounds for reversal. *Tex.R.Civ.P. 166–A; City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979).

The summary judgment was properly granted by the trial court, and such judgment is affirmed.

AFFIRMED.

DIES, C. J., not participating.